IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-CR-279-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TONY TAYLOR, | ) | |
| Defendant. | ) | |

On January 3, 2019, Tony Taylor ("Taylor") moved pro se for relief under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 [D.E. 148]. On July 19, 2019, Taylor, through counsel, moved for relief under the First Step Act [D.E. 152]. On July 29, 2019, the United States responded in opposition [D.E. 154]. On August 5, 2019, Taylor replied [D.E. 155]. On April 13, 2020, the court granted relief and reduced Taylor's sentence to 252 months' imprisonment. See [D.E. 158]. Taylor appealed. On August 26, 2020, the United States Court of Appeals for the Fourth Circuit remanded for reconsideration in light of United States v. Chambers, 956 F.3d 667 (4th Cir. 2020). See [D.E. 165].

On September 21, 2020, Probation issued a modified Presentence Investigation Report ("PSR") and revised Taylor's advisory guideline range to 235 to 293 months' imprisonment. See [D.E. 169]. On January 14, 2021, Taylor filed a sentencing memorandum, agreed with the new advisory guideline range, and requested a downward variant sentence of 200 months. See [D.E. 170] 2–6.

On August 3, 2020, Taylor moved pro se for compassionate release. See [D.E. 164]. On January 14, 2021, Taylor submitted a memorandum in support. See [D.E. 171]. On January 26, 2021, the United States responded in opposition. See [D.E. 173].

As explained below, the court grants Taylor's motion in part, reduces his sentence to 240 months' imprisonment and five years of supervised release on each count, but denies his motion for compassionate release.

I.

Taylor and others distributed cocaine base (crack) from 2002 to 2006 in an area of Dunn, North Carolina referred to as "Taylorville." PSR ¶ 7. Taylor's family members owned a majority of the property surrounding "Taylorville." See id. During 2006, agents completed several controlled purchases of cocaine base (crack) from Taylor. See id.

On November 1, 2006, a federal grand jury in this court charged Taylor with conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base (crack) in violation of 21 U.S.C. § 846 (count one). See [D.E. 3]. Counts two through seven charged distribution and possession with intent to distribute five grams or more of cocaine base (crack) in violation of 21 U.S.C. § 841(a)(1). See id. Count eight charged distribution and possession with intent to distribute fifty grams or more of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1). See id. On November 8, 2006, Taylor was arrested. See PSR ¶ 8. Taylor admitted to law enforcement that he lived at the house where the drug sales were occurring. See id. On March 6, 2007, the government filed a notice of intent to seek enhanced penalty pursuant to 21 U.S.C. § 851 [D.E. 37].

On March 7, 2007, Taylor went to trial. See Trial Tr. [D.E. 56, 56-1, 56-2, 56-3]. At trial, Harold Cooper testified that he would assist Taylor with narcotics transactions for cash or small amounts of cocaine base (crack). See [D.E. 56-2] 213–218. In addition, other witnesses testified concerning Taylor's cocaine base (crack) trafficking, including a confidential informant who made numerous controlled buys from Taylor, other cocaine base (crack) customers of Taylor, other co-

conspirators of Taylor, and law enforcement officers. See [D.E. 56] 24–40, 80–101, 118–21; [D.E. 56-1] 30–33, 65–155; [D.E. 56-2] 34–50, 53–70, 105–49, 196–202, 205–21, 234–53; [D.E. 56-3] 9–20, 48–50.

During the conspiracy, Taylor distributed approximately one kilogram of cocaine base (crack). See PSR ¶ 10. Taylor held a supervisory role and the conspiracy involved at least five co-conspirators. See id. On March 12, 2007, a jury convicted Taylor on counts one, three, four, five, six, seven, and eight. See Trial Tr. [D.E. 56-3] 175–79.

On December 4, 2007, the court held Taylor's sentencing hearing. See Sent. Tr. [D.E. 69]. The court adopted the facts set forth in the PSR, addressed Taylor's objections, and calculated the advisory guideline range. See Fed. R. Crim. P. 32(i)(3)(A)–(B); Sent Tr. at 4–17. Taylor's base offense level was 34. See PSR ¶ 35. The court applied a three-level enhancement because Taylor was a manager or supervisor of a conspiracy involving five or more participants. See id. ¶ 38. Taylor's criminal history category was VI. See id. ¶ 20. Based on a total offense level of 37 and criminal history category of VI, Taylor's advisory guideline range on each count would have been 360 months to life imprisonment, but because the United States filed a notice of intent to seek enhanced sentence under 21 U.S.C. § 851, a mandatory sentence of life imprisonment applied to counts one and eight. See id. ¶¶ 45–48; Sent Tr. at 18. The court adopted the total offense level and criminal history category in the PSR, concluded that the mandatory sentence for counts one and eight was life imprisonment, and sentenced Taylor to life imprisonment on counts one and eight and 360 months' concurrent imprisonment on counts three through seven. See Sent Tr. at 17–24. The court also sentenced Taylor to 10 years of supervised release on counts one and eight, and 8 years of supervised release on counts three through seven, concurrent. See id. at 22–23.

3

Taylor appealed. On November 24, 2008, the United States Court of Appeals for the Fourth Circuit affirmed. See United States v. Taylor, 301 F. App'x 248, 251 (4th Cir. 2008) (per curiam) (unpublished).

Taylor unsuccessfully sought post-conviction relief. See [D.E. 77, 86, 91, 94, 96, 103, 107, 109, 113, 118, 120, 122, 124, 125]. On November 22, 2016, then-President Barack Obama commuted Taylor's total sentence to a term of 293 months' imprisonment, but Taylor's 10-year term of supervised release remained the same [D.E. 128] 4.

II.

On August 3, 2010, Congress enacted the Fair Sentencing Act of 2010 ("Fair Sentencing Act"), Pub. L. No. 111-220, 124 Stat. 2371, 2372 (codified as amended at 21 U.S.C. § 801, et seq.). Section 2 of the Fair Sentencing Act reduced statutory penalties by increasing the drug quantities necessary to trigger certain statutory minimums and maximums. For example, the amount of cocaine base (crack) necessary to trigger a 5 to 40 year sentence increased from 5 to 28 grams. Likewise, the amount of cocaine base (crack) necessary to trigger a 10 year to life sentence increased from 50 grams to 280 grams. See id. § 2, 124 Stat. at 2372.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. The First Step Act makes the Fair Sentencing Act's reductions in mandatory minimum sentences apply retroactively to defendants who committed their "covered offense" of conviction before August 3, 2010. See id. § 404(a), 132 Stat. at 5222. Section 404(a) defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . that was committed before August 3, 2010." Id. Under the First Step Act, a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections

4

2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Id. § 404(b), 132 Stat. at 5222. A court that modifies a sentence under the First Step Act does so under 18 U.S.C. § 3582(c)(1)(B), which allows a court to "modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); see United States v. Collington, 995 F.3d 347, 352–60 (4th Cir. 2021); United States v. Woodson, 962 F.3d 812, 815–17 (4th Cir. 2020); Chambers, 956 F.3d at 671; United States v. Wirsing, 943 F.3d 175, 183 (4th Cir. 2019); United States v. Alexander, 951 F.3d 706, 708 (6th Cir. 2019). If a defendant qualifies, courts may consider a motion for a reduced sentence only if the defendant did not previously receive a reduction pursuant to the Fair Sentencing Act and did not have a motion under the First Step Act denied "after a complete review of the motion on the merits." First Step Act § 404(c), 132 Stat. at 5222.

Under the First Step Act, the district court adjusts the sentencing guideline calculations "as if the current lower drug offense sentences were in effect at the time of the commission of the offense." United States v. Curry, 792 F. App'x 267, 268 (4th Cir. 2020) (per curiam) (unpublished) (quotation omitted); see Collington, 995 F.3d at 355–61; Chambers, 956 F.3d at 671–72. "Nothing in . . . section [404(c) of the First Step Act]," however, "shall be construed to require a court to reduce any sentence pursuant to this section." First Step Act § 404(c), 132 Stat. at 5222; see United States v. Gravatt, 953 F.3d 258, 261 (4th Cir. 2020); Wirsing, 943 F.3d at 184–86; United States v. Barnes, No. 3:94cr80 (DJN), 2020 WL 1281235, at *3 (E.D. Va. Mar. 17, 2020) (unpublished); United States v. Latten, No. 1:02CR00011-012, 2019 WL 2550327, at *1–4 (W.D. Va. June 20, 2019) (unpublished); but cf. Collington, 995 F.3d 356–58 (district court must reduce sentence to comply with any new statutory maximum sentence).

5

The parties agree that Taylor's new advisory guideline range is 235 to 293 months' imprisonment based on a total offense level 35 and criminal history category IV. See [D.E. 170]. The court has discretion to reduce Taylor's sentence. See Collington, 995 F.3d at 355–61; Chambers, 956 F.3d at 671–72; Gravatt, 953 F.3d at 262–63; Wirsing, 943 F.3d at 184–86; Latten, 2019 WL 2550327, at *2–4. The court has completely reviewed the entire record and all relevant factors under 18 U.S.C. § 3553(a). Taylor engaged in serious criminal conduct and was responsible for distributing one kilogram of cocaine base (crack) from late 2002 until June 14, 2006. See PSR ¶¶ 1–5, 7–10. Moreover, Taylor has a serious criminal record and has performed poorly on supervision. See id. at ¶¶ 12–18. Taylor's convictions include injury to personal property, possession with intent to sell and deliver cocaine (five counts), sale and delivery of cocaine (five counts), injury to real property, carrying a concealed weapon, simple assault, and public disturbance. See id. On the other hand, Taylor has taken many positive steps while incarcerated, has been a positive influence within the Bureau of Prisons ("BOP") notwithstanding his initial life sentence, and has not incurred any disciplinary infractions throughout his time in the BOP. See [D.E. 155] 4–6; [D.E. 155-1, 155-2, 155-3]; [D.E. 156] 2; [D.E. 170] 3–6; [D.E. 170-1, 170-2, 170-3]; cf. Pepper v. United States, 562 U.S. 476, 480 (2011); United States v. High, No. 20-7350, 2021 WL 1823289, at *3 (4th Cir. May 7, 2021); United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). In light of the entire record, the court reduces Taylor's sentence on counts one, three, four, five, six, seven, and eight to 240 months' imprisonment to run concurrently. See, e.g., 18 U.S.C. § 3553(a). The court reduces the term of supervised release on all counts to five years. All other aspects of the judgment remain the same.

The court declines to reduce Taylor's sentence to 200 months' imprisonment because such a sentence would not comport with the serious and prolonged nature of Taylor's criminal conduct, Taylor's abysmal criminal history, the need to deter others, the need to incapacitate Taylor, and the need to justly punish Taylor. In reaching this decision, the court has fully considered Taylor's exemplary record while incarcerated. Moreover, even if the court miscalculated the advisory guideline range, it still would not further reduce Taylor's sentence in light of the entire record and the section 3553(a) factors. See 18 U.S.C. § 3553(a); United States v. Gomez-Jimenez, 750 F.3d 370, 382–86 (4th Cir. 2014); United States v. Hargrove, 701 F.3d 156, 161–65 (4th Cir. 2012).

## III.

As for Taylor's motion for compassionate release, on December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must

7

ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that "an extraordinary

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is—

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

8

and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. §

> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

3582(c)(1)(A). See, e.g., High, 2021 WL 1823289, at *3; United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 2021 WL 1823289, at *3; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On August 3, 2020, Taylor submitted a pro se compassionate release request. See [D.E. 164]. The court assumes without deciding that Taylor has exhausted his administrative remedies. See United States v. Alam, 960 F.3d 831, 833–34 (6th Cir. 2020).[2] Accordingly, the court addresses Taylor's claim on the merits.

Taylor seeks compassionate release pursuant to section 3582(c)(1)(A). In support of his request, Taylor cites the COVID-19 pandemic and his infection with and recovery from COVID-19 in April 2020. See [D.E. 164]. He also cites his rehabilitation. See [D.E. 170] 3–5.

---

[2] The Fourth Circuit has not addressed whether section 3582's exhaustion requirement is a jurisdictional or claims-processing requirement. The court assumes without deciding that the requirement is a claims-processing rule, and that the government must "properly invoke" the rule for this court to enforce it. See Alam, 960 F.3d at 833–34.

10

As for the medical condition of the defendant policy statement, the policy statement requires that the defendant is "suffering from a serious physical or medical condition . . . from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Although Taylor states that he got COVID-19 in April 2020 and recovered from it, he has not demonstrated that the BOP cannot address the risk of COVID-19 to Taylor while he serves his sentence. Accordingly, reducing Taylor's sentence is not consistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Taylor's health, and Taylor's rehabilitation efforts are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). Even so, the section 3553(a) factors counsel against further reducing Taylor's sentence. See Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 2021 WL 1823289, at *4–7; Ruffin, 978 F.3d at 1008–09; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020).

Taylor is 48 years old and engaged in very serious criminal behavior from 2002 to 2006. Taylor's offense conduct included conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base (crack), possession with intent to distribute more than 5 grams of cocaine base (crack), and possession with intent to distribute 50 grams or more of cocaine base (crack). Taylor is conservatively accountable for distribution of 1 kilogram of cocaine base (crack). Taylor also played a supervisory role in the conspiracy. Taylor engaged in this behavior despite a good childhood, intelligence, a supportive family, being able-bodied, and being able to earn money honestly. Greed

11

motivated Taylor. Taylor wanted his money and did not care that he poisoned others to get it. Moreover, numerous interactions with the legal system did not deter Taylor from continuing to harm the community by dealing drugs.

The court has considered Taylor's rehabilitation efforts and exposure to and recovery from COVID-19. Cf. Pepper, 562 U.S. at 480–81; High, 2021 WL 1823289, at *4–7; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. Having considered the entire record, the steps that the BOP has taken to address COVID-19 and treat Taylor, the section 3553(a) factors, Taylor's arguments, the government's persuasive response, and the need to punish Taylor for his criminal behavior, to incapacitate Taylor, to promote respect for the law, to deter others, and to protect society, the court declines to grant Taylor's motion for compassionate release. See, e.g., Chavez-Meza, 138 S. Ct. at 1966–68; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Taylor's request for home confinement, Taylor apparently seeks relief under the CARES Act. See [D.E. 164] 2. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). Thus, the court dismisses Taylor's request for home confinement.

12

## IV.

In sum, the court GRANTS in part Taylor's motion for reduction of sentence [D.E. 148]. The court reduces Taylor's sentence on counts one, three, four, five, six, seven and eight to 240 months' imprisonment on each count to run concurrently. The court reduces the term of supervised release on counts one, three, four, five, six, seven, and eight to five years. All other aspects of the judgment remain the same. The court DENIES Taylor's motion for compassionate release [D.E. 164] and DISMISSES Taylor's request for home confinement.

SO ORDERED. This 7 day of June 2021.

JAMES C. DEVER III
United States District Judge